NOVEL OTIS FOSTER,

                    Petitioner,

        v.                                                        Case No. 25-cv-0296-bhl

CHRIS BUESGEN,

                    Respondent.

## ORDER DENYING §2254 HABEAS PETITION

In January 2021, a jury convicted Petitioner Novel Otis Foster of first-degree reckless homicide with use of a dangerous weapon and three counts of possessing a firearm as a felon. Foster was sentenced to thirty-five years of initial confinement and fifteen years of extended supervision. In postconviction proceedings and on direct appeal, Foster contended that his Sixth Amendment rights were violated because his trial counsel was ineffective and he was not afforded a speedy trial. After the state courts affirmed his conviction, Foster filed a petition for writ of habeas corpus in this Court, invoking 28 U.S.C. §2254. Because Foster has not established that he is entitled to habeas relief, his petition will be denied.

## BACKGROUND[1]

On August 27, 2019, the State of Wisconsin filed a criminal complaint against Foster, charging him with first-degree reckless homicide with use of a dangerous weapon and three counts of possessing a firearm as a felon. Record, *State v. Foster*, No. 2019CF003799, Milwaukee Cnty. Cir. Ct. (available electronically at https://wcca.wicourts.gov/); (ECF No. 13-3 at 2). According to the complaint, in August 2019, Foster got into a verbal altercation with two women and then told them to leave because "[t]his is how people get killed." (ECF No. 13-3 at 2.) One of the women called Anthony Moten, who arrived at the scene moments later. (*Id.*) When Moten arrived,

---

[1] In deciding a habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. §2254(e)(1). The petitioner has the burden of rebutting that presumption by "clear and convincing evidence." *Id.* The background facts are based on the Wisconsin Court of Appeals' decision affirming Foster's conviction. (ECF No. 13-3.)

Foster had a small black gun in his hand. (*Id.*) Initially, the men "were friendly with each other and bumped fists," but then Foster began shooting at Moten's vehicle, hitting Moten, who later died from his injuries. (*Id.*) Foster confessed to the shooting, telling the police that he reacted after one of the women told Moten to "pop" or "shoot" him. (*Id.*) In Foster's version of events, he was scared, fired his gun, and fled the scene. (*Id.*) Police found ammunition in Foster's pocket and two firearms along his flight path. (*Id.*)

On April 29, 2020, Foster filed a request for prompt disposition under Wis. Stat. §971.11(2), thereby requiring the State to bring the case to trial within 120 days, subject to Wis. Stat. §971.10, Wisconsin's state speedy trial statute. (*Id.* at 4.) Foster's case was initially set for trial on August 3, 2020, well within the 120-day window. (*Id.*) At a July 20, 2020 final pretrial conference, however, the court adjourned Foster's trial. (*Id.* at 4–5.) The court explained how the COVID-19 pandemic was disrupting trials in Milwaukee County and noted that Foster's trial was to be the first in the county since the pandemic began. (*Id.*) Concluding that it could not try Foster's case within the prompt disposition period because of the "unprecedented" global nature of the pandemic, the court found good cause to extend the time limit and rescheduled the jury trial for October 5, 2020. (*Id.*)

The parties returned to court for the rescheduled final pretrial conference on September 10, 2020, and the court again continued the trial date. (*Id.* at 5.) In doing so, the court again pointed to the pandemic, this time explaining that it was not authorized to conduct the trial as previously scheduled because Milwaukee County had assigned each branch certain weeks to hold trials, and October 5th was not a week its branch was allowed to conduct a trial. (*Id.*) Rather than setting a new trial date, the court set another pretrial hearing for September 21, 2020. (*Id.*)

At the September 21, 2020 hearing, the judge explained that the soonest Foster's trial could begin was October 19, 2020 and set trial for that date. (*Id.*) The court again found good cause to extend the trial start date, citing the policies and procedures adopted to protect litigants and the public against COVID-19. (*Id.*)

The trial court ultimately adjourned the October 19, 2020 trial date too. On October 15, 2020, the court explained that eight members of the Milwaukee Police Department's homicide team were unable to attend the upcoming trial because they had COVID-19 and were quarantined. (*Id.*) At first, the trial court did not immediately delay the trial and instead told the parties to prepare as though the case would move forward because Foster's trial was the court's top priority.

(*Id.*)  On October 19, 2020, the state reported that eight of its police officer witnesses would not be able to enter the courthouse due to the courthouse COVID-19 guidelines.  (*Id.* at 5–6.)  Foster's attorney objected to allowing those witnesses to testify via Zoom.  (*Id.*)  The state said it could not go forward without the missing witnesses.  (*Id.* at 6.)  Based on the missing witnesses and Foster's objection to Zoom appearances, the trial court found good cause to adjourn trial again.  (*Id.*)  Foster had filed a motion to dismiss the charges against him on speedy trial grounds on October 14, 2020.  (*Id.*)  The court denied Foster's motion and rescheduled trial for January 19, 2021.  (*Id.*)

Foster's case finally went to trial on January 19, 2021.  (*Id.*)  The jury found him guilty of all charges and the court sentenced him to serve thirty-five years of initial confinement and fifteen years of extended supervision.  (*Id.* at 3.)  Foster sought postconviction relief, but the postconviction court denied all seven grounds he raised without a hearing.  (*Id.*)

Foster then appealed.  (*Id.*)  The Wisconsin Court of Appeals struggled to understand Foster's arguments, finding them "difficult to discern."  (*Id.*)  Based on the state's reframing of the issues, the Court of Appeals interpreted Foster's filings to raise two issues: (1) whether the circuit court properly exercised its discretion when it granted continuances based on good cause, per the Intrastate Detainers Act and Wis. Stat. §971.10; and (2) whether the circuit court properly denied Foster's ineffective assistance of trial counsel claims without a hearing.  (*Id.*)  It then rejected both claims.  As to the first issue, the Court of Appeals concluded that the trial court had properly exercised its discretion when it pushed back the start of trial.  (*Id.* at 6.)  The appellate court noted the trial court's express recognition of the importance of promptly holding trial while trying to navigate the unprecedented issues arising from the global pandemic.  (*Id.*)  It also noted that the trial court had never delayed trial without first finding good cause and citing a number of appropriate factors.  (*Id.*)  With respect to Foster's ineffective assistance claim, the Court of Appeals concluded that Foster failed to allege sufficient fact to support his claims that trial counsel's had improperly failed to investigate the tracking of Foster's phone, to investigate the circumstances surrounding a search of a home where he was an overnight guest, and to obtain and present favorable evidence that the state and prison improperly withheld during discovery.  (*Id.* at 6–9.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. To obtain relief under AEDPA, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (quoting 28 U.S.C. §2254(a)). With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally very difficult to meet. *See Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is "contrary to . . . clearly established Federal law" within the meaning of Section 2254(d)(1) if the state court "applie[d] a rule different from the governing law set forth" by Supreme Court precedent or when the state court "decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision involves an "unreasonable" application of established precedent within the meaning of Section 2254(d)(1) when the "state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under either prong, it is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

**ANALYSIS**

On habeas, Foster raises three grounds for relief. He asserts two claims for ineffective assistance of counsel based on his trial counsel's (1) failure to investigate a potential Fourth Amendment violation and (2) failure to use favorable evidence. He also asserts that his Sixth Amendment rights to a speedy trial were violated. (ECF No. 1 at 6, 10, 14.) As explained below, none of these grounds provides a basis for habeas relief.

**I.     Foster's Ineffective Assistance of Trial Counsel Claims Fail Because They Were Decided On Adequate and Independent State Law Grounds.**

This Court cannot grant Foster habeas relief based on his ineffective assistance claims because they are procedurally barred. The Wisconsin Court of Appeals concluded that Foster had not alleged sufficient facts to warrant an evidentiary hearing on these claims under *State v. Allen*, 682 N.W.2d 433, 446 (Wis. 2004). Under Wisconsin law, a court cannot grant relief on an ineffective assistance of counsel claim without holding a hearing—known as a *Machner* hearing— at which trial counsel testifies. *See State v. Machner*, 285 N.W.2d 905, 908–09 (Wis. Ct. App. 1979). But a defendant is only entitled to a *Machner* hearing if he "provide[s] sufficient material facts—*e.g.*, who, what, where, when, why, and how—that, if true, would entitle him to the relief he seeks." *Allen*, 682 N.W.2d at 446. This requirement is commonly known as the *Allen* rule. The Wisconsin Court of Appeals clearly and expressly relied on the *Allen* rule when it rejected Foster's claims based on his failure to support his claims with sufficient facts to warrant a *Machner* hearing. (ECF No. 13-3 at 7–9.)

In habeas, a procedural default precludes a federal court from considering the merits of the petitioner's habeas claims. The doctrine applies when the petitioner's claim "was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds[.]" *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). The Seventh Circuit has confirmed that a state court ruling relying upon *Allen* is an adequate and independent state law ground for the purposes of procedural default in federal habeas corpus proceedings. *See Lee v. Foster*, 750 F.3d 687, 693–94 (7th Cir. 2014). This precludes habeas review of Foster's ineffective assistance claims here.

To avoid this result, Foster argues that the state court did not rely upon *Allen*, because it cited *Strickland v. Washington*, 466 U.S. 668 (1984). (ECF No. 21 at 13.) This misstates the record. While the appellate court opened its ineffective assistance of counsel section by explaining

what constitutes ineffective assistance under *Strickland*, the Court of Appeals rejected his claim based on *Allen* and his failure to satisfy the "who, what, where, when, why, and how" requirement. (*See* ECF No. 13-3 at 6–9 ("Foster did not allege sufficient facts to support his claim[s]. . . . He offers only conclusory assertions.").) Because the state court relied upon the *Allen* rule when it denied Foster's appeal, the Court cannot address the merits of his ineffective-assistance claims. *See Lee*, 750 F.3d at 693–94. Accordingly, these claims cannot form the basis for habeas relief.

## II. Although Foster Receives the Benefit of *De Novo* Review for His Speedy Trial Claim, His Right to a Speedy Trial Was Not Violated.

Although Foster raised issues with the trial court's delay in conducting his trial, the Wisconsin Court of Appeals did not specifically address whether these delays violated Foster's Sixth Amendment speedy trial rights. (*See* ECF No. 13-3 at 3–6.) Instead, the Court of Appeals focused on potential violations of state law raised by the multiple continuances to Foster's trial dates and concluded the trial court had properly complied. (*See id.*) Whether the state trial and appellate courts erred in their application of Wisconsin law is not a cognizable claim on federal habeas review. *See Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003) ("Federal habeas corpus relief does not lie for errors of state law[.]").

The government therefore contends that Foster never presented a constitutional speedy trial claim in state court and this claim must be dismissed as unexhausted. (ECF No. 18 at 12.) The record does not support this approach. While the Wisconsin Court of Appeals characterized Foster's state court appellate brief as "difficult to discern," (ECF No. 13-3 at 3), his brief specifically argues that the delay "violat[ed] Foster 6th and 14th Amendment of the united states constitution" and that "the only remedy . . . when a prisoner . . . is denied a speedy trial right" is dismissal. (ECF No. 13-2 at 33–34 (citing *Strunk v. United States*, 412 U.S. 434, 440 (1973) (vacating a sentence and dismissing an indictment based on a speedy trial constitutional violation)).) While this court has sympathy for the state court's struggles with a hard-to-follow filing, for habeas purposes, Foster's reference to the 6th and 14th Amendments was sufficient to put the state court on notice of Foster's federal speedy trial claim. *See White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir. 2009) (providing when a federal constitutional claim is fairly presented to the state courts).

The state court's failure to address Foster's federal claims does not mean that a violation of his rights occurred; this Court simply applies a different standard of review. The Seventh Circuit

has held that, for speedy trial claims, if the federal speedy trial claim was presented to the state court and the state court relies solely on a state speedy trial act without mentioning the federal constitutional right, *de novo* review applies. *See Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014). When considering a claim *de novo*, the Court considers whether "the record as a whole supports the state court's outcome," and, if it does, "the correct result [is] to deny the petition for a writ of *habeas corpus*." *Brady v. Pfister*, 711 F.3d 808, 827 (7th Cir. 2013).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. Its guarantee of a speedy trial in all criminal prosecutions is a fundamental right incorporated against the States by the Fourteenth Amendment. *See Klopfer v. North Carolina*, 386 U.S. 213 (1967). The Supreme Court has established a four-part balancing test to determine whether a defendant's constitutional right to a speedy trial was violated: length of delay; reason for delay; the defendant's assertion of the right; and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The test involves a "difficult and sensitive balancing process." *Id.* at 533. In this case, even applying *de novo* review, the record demonstrates that Foster's speedy trial rights were not violated.

As to the first factor, the length of delay serves as "a triggering mechanism; unless a presumptively prejudicial amount of time elapsed [], it is unnecessary to conduct a searching analysis of all the factors." *United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007). In this case, Foster was charged on August 27, 2019 and his trial began on January 19, 2021—almost 17 months later. Delays exceeding one year are presumptively prejudicial and warrant a full review of the *Barker* factors. *Ashburn*, 761 F.3d at 752 (citing *Oriedo*, 498 F.3d at 597; *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). In determining the weight to give the length of the delay, the Court considers the extent that the delay exceeds the twelve months that triggered the analysis. *Oriedo*, 498 F.3d at 597. Because the total delay exceeded the year mark by five months, this factor weighs "only moderately" in Foster's favor. *See Ashburn*, 761 F.3d at 752 (finding that a 20-month delay weighed "only moderately" in the defendant's favor).

The second *Barker* factor—the reason for the delay—weighs heavily against Foster. Foster's trial was initially set for August 3, 2020, within the year Foster was initially charged. The trial court was forced to continue the trial on multiple occasions due to the unprecedented uncertainties and demands of the COVID-19 pandemic. The state court first continued Foster's trial to October 5, 2020, explaining that an adjournment was necessary based on the COVID-19

pandemic.  The court then continued trial until October 19, 2020, again based on the pandemic, explaining that the court lacked a courtroom to hold trial in the week of the 5th.  As October 19, 2020 approached and key witnesses contracted COVID-19, making them unable to attend trial in person, and the state court again addressed Foster's speedy trial concerns.  Indeed, the trial court attempted to keep the date, but this effort was obstructed by Foster's own objection to allowing COVID-positive witnesses to testify via Zoom.  While Foster was within his rights to make this objection, his refusal to allow Zoom testimony resulted in further delays and undercuts his speedy trial claim.  Accordingly, the trial was again continued, with the judge citing reasonable concerns arising from the pandemic and the need to comply with courthouse safety procedures and protocols.  Delaying the trial was a reasonable judgment that also protected Foster's constitutional right to confront his accusers in person.  This factor thus weighs heavily against Foster's speedy trial claim and rebuts any presumption of prejudice flowing from the 17-month delay in starting his trial.

The third *Barker* factor considers whether the defendant asserted his right to a speedy trial. This, again, weighs against Foster.  While Foster clearly requested a prompt disposition under state law, he has pointed to no evidence that he invoked any constitutional speedy trial rights until his October 14, 2020 motion to dismiss—five days before trial was set to begin.  (*See* ECF No. 13-5 at 2:19–25; ECF No. 13-6 at 2:13–23; ECF No. 13-7 at 2:17–18; ECF No. 1-1 at 30 (raising a speedy trial constitutional claim on October 14, 2020 in a motion to dismiss).)  While not entirely untimely, the lateness of Foster's assertion of the constitutional issue weighs against him.

The fourth *Barker* factor relates to any prejudice Foster may have experienced from the delay.  The court analyzes the interests of a speedy trial, interests that seek to prevent oppressive pretrial incarceration, minimize anxiety and concern of the accused, and limit the possibility that the defense will be impaired.  *West v. Symdon*, 689 F.3d 749, 752–53 (7th Cir. 2012) (quoting *Barker*, 407 U.S. at 532).  The Court acknowledges that Foster was subject to pretrial incarceration while he awaited trial and that he likely had anxiety and concern, which weighs in favor of Foster. But he points to nothing suggesting that his substantive defense was impaired.  A defense is impaired when evidence the defense wishes to use is no longer available at the time of trial.  *See id.* at 753 (defendant arguing that his defense was harmed because an alibi witness died during the delay); *see also Loera v. United States*, 714 F.3d 1025, 1032 (7th Cir. 2013) ("[T]here is no indication that . . . evidence favorable to his defense had become stale.").  Foster argues that his

defense was impaired because the state withheld discovery during the speedy trial deadlines. (ECF No. 14 at 13–14.) This argument, however, confuses the issues. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecution's suppression of evidence favorable to an accused upon request violates due process if the evidence is material to guilt or punishment. A *Brady* violation is therefore a due process claim separate and distinct from a speedy trial claim. Foster's argument mixes two separate constitutional issues into one, but Foster did not raise a stand-alone *Brady* violation to the state court or in his petition for writ of habeas corpus.[2] He cannot change his theory now. *See Johnson v. Hulett*, 574 F.3d 428, 431–32 (7th Cir. 2009). Moreover, if Foster did not have evidence favorable to him to prepare for trial due to the state's suppression, a trial beginning even earlier without that evidence in hand would not have avoided the alleged harm. More relevant, Foster does not argue that any evidence would have been available to him at the initial trial date that then became unavailable after the delay. Accordingly, the Court concludes that Foster was not significantly prejudiced by the delay. Any prejudice he suffered from remaining in custody as the state court struggled to get his trial conducted amidst the pandemic is insufficient to support a speedy trial violation. *See Ashburn*, 761 F.3d at 753 (citing *Oriedo*, 498 F.3d at 600).

In the end, the *Barker* factors applied *de novo* do not support a speedy trial violation. *Barker* requires the Court to consider the length of the delay, the reason for the delay, the defendant's assertion of the right, and the prejudice to the defendant. 407 U.S. at 530. But the delay was not substantial; Foster contributed to the delay; Foster did not raise a federal constitutional speedy trial claim until the last minute; and there is no evidence the delay impaired Foster's defense. The record supports the conclusion that Foster was not denied his Sixth Amendment right to a speedy trial. *See Ashburn*, 761 F.3d at 753–54 (collecting cases holding that delays in trial alone are insufficient to establish prejudice for a speedy trial violation); *see also Pfister*, 711 F.3d at 827. Accordingly, the Court will deny Foster's petition for writ of habeas corpus.

---

[2] The Court acknowledges that Foster claimed his trial counsel was ineffective for failing to obtain and present favorable discovery that the state and prison improperly withheld, which is arguably a *Brady* violation within his ineffective assistance of counsel claim. (*See* ECF No. 1 at 3; ECF No. 13-3 at 9.)

**CERTIFICATE OF APPEALABILITY**

Under Rule 11(a) of the rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

**CONCLUSION**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Novel Otis Foster's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner. *Slack*, 529 U.S. at 484.

Dated at Milwaukee, Wisconsin on April 24, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge